B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| PLAINTIFFS  Ambac Assurance Corporation | DEFENDANTS  City of Fairfield, Alabama    J.T. Smallwood, Tax Collector of Jefferson County |
|---|---|

**ATTORNEYS** (Firm Name, Address, and Telephone No.)

Sara Anne Ford
400 20th Street North
Birmingham, Al 35203
sford@lightfootlaw.com
205-581-0700

Nathan Coco
Pennzoil Place
700 Milam Street, Suite 1300, PMB 106
Houston, TX 77002
ncoco@mwe.com
713-653-1775

Megan Preusker
444 West Lake Street, Suite 4000
Chicago, IL
mpreusker@mwe.com
312-984-3668

**ATTORNEYS** (If Known)

R. Scott Williams
2001 Park Place, Suite 1300
Birmingham, Alabama 35203
swilliams@rumberger.com
205-327-5550

Wayne Morse
2323 2nd Ave. N.
Birmingham, Alabama 35203
morse@wskllc.com
205-327-8325

| PARTY (Check One Box Only) | PARTY (Check One Box Only) |
|---|---|
| ☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor ☐ Other<br>☐ Trustee | ☒ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Complaint for declaratory judgment that (a) pledged ad valorem tax revenues of the City are restricted and cannot be collected or used by Defendants for any purpose except to satisfy the City's payment obligations with respect to those certain $14,600,000 General Obligation Refunding Warrants, Series 2004 (the "Warrants"), unless and until all outstanding obligations under the Warrants have been satisfied; (b) the City lacks an equitable or beneficial property interest in the pledged ad valorem tax revenues; (c) Plaintiff, as a Warrant holder, has equitable and beneficial property interests in the pledged ad valorem tax revenues; (d) the Plaintiff has a statutory lien on the pledged ad valorem tax revenues; (e) the pledged ad valorem tax revenues are special revenues under section 902(2) of the Bankruptcy Code; (f) the failure to remit the pledged ad valorem tax revenues to the special trust fund to be maintained until the principal of and interest on the Warrants shall have been paid in full (the "Warrant Fund") or to Warrant holders for payment of principal of and interest on the Warrants would violate sections 922(d) and 928(a) of the Bankruptcy Code; and (g) the City's use of the pledged ad valorem tax revenues for purposes other than the payment of the principal of and interest on the Warrants would be an unlawful taking. By this adversary proceeding, the Plaintiff also seeks injunctive relief enjoining the Defendants from continuing to divert the pledged ad valorem tax revenues and directing the Tax Collector to remit the pledged ad valorem tax revenues for deposit into the Warrant Fund or to Warrant holders for payment of the principal of and interest on the Warrants.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

| | |
|---|---|
| **FRBP 7001(1) – Recovery of Money/Property**<br>☐ 11-Recovery of money/property - §542 turnover of property<br>☐ 12-Recovery of money/property - §547 preference<br>☐ 13-Recovery of money/property - §548 fraudulent transfer<br>☐ 14-Recovery of money/property - other | **FRBP 7001(6) – Dischargeability (continued)**<br>☐ 61-Dischargeability - §523(a)(5), domestic support<br>☐ 68-Dischargeability - §523(a)(6), willful and malicious injury<br>☐ 63-Dischargeability - §523(a)(8), student loan<br>☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation<br>(other than domestic support)<br>☐ 65-Dischargeability - other |
| **FRBP 7001(2) – Validity, Priority or Extent of Lien**<br>☑ 21-Validity, priority or extent of lien or other interest in property | |
| **FRBP 7001(3) – Approval of Sale of Property**<br>☐ 31-Approval of sale of property of estate and of a co-owner – §363(h) | **FRBP 7001(7) – Injunctive Relief**<br>☐ 71-Injunctive relief – imposition of stay<br>☑ 72-Injunctive relief – other **3** |
| **FRBP 7001(4) – Objection/Revocation of Discharge**<br>☐ 41-Objection / revocation of discharge - §727(c),(d),(e) | **FRBP 7001(8) Subordination of Claim or Interest**<br>☐ 81-Subordination of claim or interest |
| **FRBP 7001(5) – Revocation of Confirmation**<br>☐ 51-Revocation of confirmation | **FRBP 7001(9) Declaratory Judgment**<br>☑ 91-Declaratory judgment **1** |
| **FRBP 7001(6) – Dischargeability**<br>☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims<br>☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud<br>☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny<br>**(continued next column)** | **FRBP 7001(10) Determination of Removed Action**<br>☐ 01-Determination of removed claim or cause<br><br>**Other**<br>☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*<br>☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case) |

| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |
| Other Relief Sought | |

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>City of Fairfield, Alabama | BANKRUPTCY CASE NO.<br>20-01800-9 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Northern District of Alabama | DIVISION OFFICE<br>Southern Division | NAME OF JUDGE<br>Judge Mitchell |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br><br>August 27, 2020 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>Nathan Coco | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| City of Fairfield, Alabama, | ) | Chapter 9 |
| | ) | |
| Debtor. | ) | Case No. 20-01800-9 |
| | ) | |
| | ) | |
| Ambac Assurance Corporation | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 20-_____ |
| | ) | |
| City of Fairfield, Alabama and J.T. Smallwood, | ) | |
| Tax Collector of Jefferson County | ) | |
| | ) | |
| Defendants. | ) | |

## ADVERSARY COMPLAINT

Ambac Assurance Corporation ("Ambac" or the "Plaintiff"), a creditor of the City of Fairfield, Alabama (the "City" or the "Debtor"), by and through its undersigned counsel, alleges the following claims for relief against the Debtor and J.T. Smallwood, Tax Collector of Jefferson County (the "Tax Collector" and, together with the City, the "Defendants"):

### INTRODUCTION

1.     This adversary proceeding seeks declaratory and injunctive relief with respect to those certain $14,600,000 General Obligation Refunding Warrants, Series 2004 (the "Warrants") issued pursuant to Ordinance No. 974 (the "Ordinance")[1] adopted by the City on August 16, 2004. The Warrants are secured by a statutory lien, an express trust, and a first-priority pledge of the

---

[1]  A true and correct copy of the Ordinance is attached hereto as Exhibit A.

City's *ad valorem* taxes. *See* Ex. A, § 6. Under the express terms of the City's own Ordinance, the pledge granted to Warrant holders is "absolute," "irrevocabl[e]," and "*prior and superior* to all claims for salaries and all other expenses of operating the City." *Id*. (emphasis added). The Ordinance states that the pledged revenues are subject to a "special trust fund," and mandates that they be "segregated and set aside" for the purpose of debt service due on the Warrants. Ex. A, §§ 6 & 7. The Ordinance is clear that the pledged *ad valorem* taxes may not be used for any purpose other than debt service on the Warrants, unless and until all principal and interest due and owing on them has been paid.

2. The Debtor has no cognizable right to or interest in the pledged revenues in light of the unpaid principal and interest due on the Warrants. Nonetheless, the Debtor has sought to unlawfully invade and misappropriate the pledged revenues by demanding turnover thereof, both with respect to pre-petition and post-petition *ad valorem* tax proceeds.

3. Ambac is the financial guarantor with respect to the Warrants, and is expressly authorized under the Ordinance to enforce the rights and remedies granted to the Warrant holders. Ambac brings this adversary proceeding to safeguard and preserve the statutory lien, special revenue pledge, and trust protections afforded to the Warrant holders under the Ordinance, applicable Alabama state law, and the governing provisions of Title 11 of the United States Code (the "Bankruptcy Code").

4. Specifically, Ambac seeks a declaratory judgment that (a) the *ad valorem* tax revenues specified in the Ordinance are "absolute[ly]" and "irrevocably" pledged to repayment of the Warrants and cannot be used by the Debtor for any purpose except to satisfy the City's payment obligations with respect thereto, unless and until all outstanding obligations under the Warrants have been satisfied; (b) the *ad valorem* tax revenues specified in the Ordinance are subject to a

2

trust for the benefit of the holders of the Warrants and, therefore, do not constitute "property of the [debtor]" within the meaning of Bankruptcy Code section 362(a)(3), as modified by section 902(1); (c) the pre-petition and post-petition *ad valorem* tax revenues specified in the Ordinance are subject to a statutory lien under both the Ordinance and applicable Alabama law; (d) the post-petition *ad valorem* tax revenues specified in the Ordinance constitute "special revenues" within the meaning of section 902(2) of the Bankruptcy Code and remain subject to the Warrant holders' post-petition lien pursuant to Bankruptcy Code sections 922(d) and 928(a); (e) the Defendants' failure to remit the pledged revenues to the special trust fund established under the Ordinance (*i.e.*, the "Warrant Fund," as defined herein) violates the Ordinance and applicable Alabama law; (f) the City's attempted use or misappropriation of pledged revenues violates the Takings Clause of the U.S. Constitution; and (g) the City is prohibited from challenging the validity of Warrant holders' liens on the pledged *ad valorem* tax revenues under Alabama Code section 6-6-755 and the doctrine of *res judicata*.

5.      By this adversary proceeding, Ambac also seeks injunctive relief directing the Tax Collector to remit the pledged *ad valorem* tax revenues to the Warrant Fund for the payment of the principal and interest due on the Warrants as required under the Ordinance and applicable Alabama law.

## PARTIES

6.      Ambac is a Wisconsin-domiciled insurance corporation with its principal place of business in New York.  Ambac is a provider of financial guaranty insurance to public finance and infrastructure markets.

7.      The City is a municipality organized under the laws of the State of Alabama that is located in Jefferson County, Alabama and is the Debtor in this Chapter 9 case.  The City is the issuer of the Warrants.

Case 20-01800-TOM9    Doc 113    Filed 08/27/20    Entered 08/27/20 17:58:22    Desc Main
Document    Page 5 of 29

8. J.T. Smallwood is the Tax Collector of Jefferson County and, as such, collects *ad valorem* taxes levied by the City. The Tax Collector is holding and will in the future hold collected *ad valorem* tax revenues that have been irrevocably pledged by the City for payment of the principal of and interest due on the Warrants.

## JURISDICTION AND VENUE

9. The Debtor's case is properly before this Court under 11 U.S.C. § 921. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334.

10. This is a core proceeding under 28 U.S.C. § 157(b)(2).

11. This Court has the power to hear this matter as an adversary proceeding under Rules 7001(2), 7001(7), and 7001(9) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

12. Venue is proper in this district pursuant to 29 U.S.C. § 1409 because the Debtor's Chapter 9 bankruptcy case is pending here.

## BACKGROUND

13. On August 16, 2004, the City adopted the Ordinance. The Ordinance authorized the issuance of the Warrants in the original aggregate principal amount of $14,600,000. The Warrants mature over time, beginning in 2005 and ending in 2029, and accrue interest at varying rates, depending on the maturity date. *See* Ex. A, § 2.

14. As reflected in the Minutes adopted by the City Council in connection with the issuance of the Warrants on March 18, 2004 (the "Minutes"),[2] the Warrants were issued "[p]ursuant to the provisions of the constitution and laws of the State of Alabama, including particularly Sections 11-47-4 and 11-81-1, Code of Alabama 1975, as amended, and for the

---

[2] A true and correct copy of the Minutes is attached as Exhibit B.

4

purpose of financing the costs of the Public Improvements and refunding the Outstanding Obligations … ." Ex. B, § 2.

15. The Minutes constitute the legislative history for the Ordinance, and memorialize the City's intentions and understanding with respect to the rights and interests pledged in connection with the Warrants. The Minutes, like the Ordinance itself, state that the Warrants will be secured by an "irrevocabl[e]" pledge of certain "Pledged Tax Proceeds." Ex. B, § 3 ("So much of the Pledged Tax Proceeds paid to the City as may be necessary for such purpose shall be irrevocably pledged for payment of the principal of and the interest on the Series 2004 Warrants"). The Minutes further state that "that the Series 2004 Warrants shall have precedence over claims for all operating expenses of the City or any other purpose … ." *Id.*

16. On May 19, 2020 (the "Petition Date"), the City filed its petition under Chapter 9 of the Bankruptcy Code.

17. On July 30, 2020, the City sent a letter to the Tax Collector demanding that all presently held and future tax revenues—including *ad valorem* tax revenues pledged for payment of the principal of and interest on the Warrants—be transmitted directly to the City, in violation of the terms of the Ordinance, applicable Alabama law, and the Bankruptcy Code.

18. On August 7, 2020, the Debtor filed the *City of Fairfield's Motion to Enforce the Automatic Stay* [Docket No. 102] seeking the remittance of the pledged *ad valorem* tax revenues to the City.

## I. The Warrants Are Secured By A First-Priority Pledge of the City's *Ad Valorem* Tax Revenues.

19. By the terms of the Ordinance, the Warrants are secured by an "absolute," first-priority, "irrevocabl[e]" pledge of certain "Pledged Tax Proceeds." *See* Ex. A, § 6 ("as security for payment of such principal and interest … the City hereby irrevocably pledges and hereby orders

5

segregated and set aside for that purpose, so much as may be necessary therefor of the proceeds of the general ad valorem tax … [and the] special municipal ad valorem tax … that is levied and collected in the City").

20. The "Pledged Tax Proceeds" irrevocably pledged to the Warrant holders under the Ordinance include the proceeds of a "*special* municipal ad valorem tax (the 'Special Ad Valorem Tax') that is levied and collected in the City under the authority of Amendment No. 8 to the Constitution of Alabama of 1901, as amended, at the rate of 10.23 mills on each One Dollar ($1.00) of taxable property in the City." *Id.* (emphasis added).

21. As memorialized in the Minutes adopted by the City Council in connection with the issuance of the Warrants, the City authorized and directed the commencement of a judicial proceeding "for the validation of the Series 2004 Warrants and the pledge of the Pledged Tax Proceeds by the City pursuant to the provisions of Article 17, Chapter 6, Title 6, Code of Alabama 1975." Ex. B, § 4. Pursuant to this direction, the City filed a validation proceeding captioned *The City of Fairfield v. The Taxpayers and Citizens of Fairfield, Alabama*, Civil Action File No. CV-04-671, in the Circuit Court of Jefferson County, Alabama (the "Validation Proceeding").

22. In the *Plaintiff's The City Of Fairfield, Alabama Trial Brief* filed in the Validation Proceeding on June 18, 2004 (the "Trial Brief"),[3] the City admitted, and asked the Circuit Court to decree, that:

> [T]he pledge of the Pledged Tax Proceeds for the benefit of the Series 2004 Warrants is prior and superior to all salaries and other expenses of operating the City, and that all proceedings taken in connection with the authorization and issuance of the Series 2004 Warrants are and will be in all respects legal and valid; that the City has full power and authority to pledge the Pledged Tax Proceeds and to make payments thereunder to the holders of the Series 2004 Warrants; that the City has full authority under the Constitution and laws of the State of Alabama to execute and deliver the Series 2004 Warrants, to pledge the Pledged Tax Proceeds for the payment thereof, to use the proceeds of the Series 2004 Warrants to acquire, construct and equip the Public Improvements, to refund the

---

[3]     A true and correct copy of the Trial Brief is attached as Exhibit C.

6

Outstanding Obligations and to pay the expenses of issuance of the Series 2004 Warrants;
…

Ex. C, p. 2.

23.     At the conclusion of the Validation Proceeding, the Circuit Court of Jefferson County issued its *Findings of Fact, Conclusions of Law and Final Judgment* (the "Judgment").[4] In the Judgment, the Court concluded, as a matter of law, that "[t]he Pledged Tax Proceeds are authorized by law to be used to pay the principal and interest on the Series 2004 Warrants." Ex. D, Conclusions of Law, ¶ 9.

24.     The Circuit Court further concluded that:

[T]hose provisions of the Series 2004 Warrant Resolution that will provide that the Pledged Tax Proceeds may not be applied to pay any of the 'reasonable and necessary expenses of operating the City' and specifically, that the Pledged Tax Proceeds are not subject to claims for salaries or other expenses of operating the City are valid and binding provisions of the Series 2004 Warrant Resolution and of the Series 2004 Warrants.  Instead, the pledge of the Pledged Tax Proceeds under the Series 2004 Warrant Resolution and the pledge of the Pledged Tax Proceeds by the City for the payment, security and benefit of the Series 2004 Warrants will be prior and superior to all claims for costs and expenses of operating the City.

Ex. D, ¶ 10.

25.     In the portion of the Judgment titled "Final Judgment," the Circuit Court adjudged and decreed that "[t]o the extent necessary to validate and confirm the Authorizing Resolution, the Series 2004 Warrants and the means provided for the payment of the Series 2004 Warrants, the Court specifically holds that … the pledge of the Pledged Tax Proceeds by the City for the benefit of the Series 2004 Warrants and other provisions in the Series 2004 Warrant Resolution for the security and benefit of the Series 2004 Warrants is prior and superior to all claims for expenses of operating the City." Ex. D, Final Judgment, ¶ 4.

---

[4]     A true and correct copy of the Judgment is attached as Exhibit D.

7

26. The irrevocable pledge of the ad valorem taxes is valid and binding as a matter of Alabama law. Because the Warrants and the irrevocable pledge of the City's *ad valorem* taxes in connection therewith were validated and confirmed by the Judgment, pursuant to Alabama Code § 6-6-755, "the validity of such obligations or of the tax or other means provided for their payment shall never be called into question in any court of this state." Ala. Code § 6-6-755.

27. The Ordinance directs the Tax Collector to deposit the pledged *ad valorem* tax revenues directly into the trust account established by the Ordinance to fund the principal and interest payments on the Warrants as they come due (the "Warrant Fund"). See Ex. A, §§ 7 & 9. The Warrant Fund is maintained and administered by U.S. Bank, National Association, as custodian and paying agent for the Warrants (the "Custodian").

28. By letter dated August 19, 2004 (the "2004 Order and Direction")[5], as authorized in section 9 of the Ordinance, the City further advised the Tax Collector that, pursuant to the Ordinance, the City had issued the Warrants, which were "secured by a pledge of the proceeds of (i) that certain general municipal ad valorem tax (the 'General Ad Valorem Tax') … and (ii) that certain special municipal ad valorem tax (the 'Special Ad Valorem Tax')." The 2004 Order and Direction directed the Tax Collector, "[a]s provided in Section 9 of the Authorizing Ordinance," "from and after this date, to pay to … the custodian of the 'Warrant Fund' created in the Authorizing Ordinance, the proceeds of the General Ad Valorem Tax and the Special Ad Valorem Tax to the extent required to be so paid to the said [custodian], which proceeds shall be applied by the said [custodian], as provided in the Authorizing Ordinance." *See* Ex. E.

---

[5] A true and correct copy of the 2004 Order and Direction is attached as Exhibit E.

8

29.     On April 30, 2012, the City issued another written Order and Direction to the Tax Collector (the "2012 Order and Direction").[6]  The 2012 Order and Direction referenced the Warrants and the Ordinance, as well as a separate series of warrants issued by the City in 2012.

30.     The 2012 Order and Direction reiterated that "[p]ayment of the principal of and the interest on the Series 2004 Warrants is secured by a first priority pledge of the net proceeds of (i) that certain municipal ad valorem tax (the 'General Ad Valorem Tax') that is levied on all taxable property in the City … and (ii) that certain special municipal ad valorem tax (the 'Special Ad Valorem Tax' and together with the General Ad Valorem Tax, the 'Pledged Ad Valorem Taxes') that is levied on all taxable property in the City." *See* Ex. F.

31.     The 2012 Order and Direction "order[ed] and direct[ed] [the Tax Collector], from and after the date of this direction, to pay [U.S. Bank], as custodian of the 'Warrant Fund' created in the Series 2004 Authorizing Ordinance and the 'Revenue Fund' created in the Series 2012 Indenture, ALL of the proceeds of the Pledged Ad Valorem Taxes (remaining after costs of collection) collected each fiscal year, as and when received by you as Tax Collector for Jefferson County, Alabama." *Id.*

32.     The 2012 Order and Direction was explicit that the "City's order and direction to [the Tax Collector] to pay ALL of the proceeds of the Pledged Ad Valorem Taxes collected each fiscal year to [U.S. Bank] is irrevocable by the City for so long as either the Series 2012 Warrants or Series 2004 Warrants are outstanding." *Id.*

## II.     The Pledged Revenues Are Held in Trust for the Benefit of Warrant Holders.

33.     In addition to the lien rights established under the Ordinance, the *ad valorem* tax revenues pledged thereunder are subject to an express trust for the benefit of Warrant holders.  The

---

[6]     A true and correct copy of the 2012 Order and Direction is attached hereto as Exhibit F.

Ordinance established a trust account in connection with the Warrants, called the "Warrant Fund," which it designates as a "special trust fund" to be maintained "until the principal of and the interest on the Series 2004 Warrants shall have been paid in full" and into which the pledged *ad valorem* tax revenues are to be deposited to fund the principal and interest payments on the Warrants as they come due.  Ex. A, § 7.  The Ordinance mandates that the pledged *ad valorem* tax revenues be "segregated and set aside for that purpose."  Ex. A, § 6.  The Ordinance requires that the Tax Collector deposit the pledged *ad valorem* tax revenues directly into the Warrant Fund, maintained by the Custodian, to fund the principal and interest payments on the Warrants as they come due.  *See* Ex. A, §§ 7 & 9.  As such, the pledged *ad valorem* tax revenues never come into the possession of the City under the financing structure prescribed in the Ordinance, unless and until full debt service, principal and interest, has been paid on the Warrants.

34.     Section 7 of the Ordinance states, in pertinent part, that:

[T]he City will pay or cause to be paid into the Warrant Fund the entire Pledged Tax Proceeds that shall be paid to it, as such proceeds are received by it, until there shall have been paid into the Warrant Fund an amount which, when added to any other moneys paid into or on deposit in the Warrant Fund, will equal all of the interest maturing with respect to the Series 2004 Warrants each such fiscal year, as well as all of the principal of the Series 2004 Warrants that shall be due on the next succeeding February 1.

Ex. A, § 7.  Section 9 of the Ordinance states that:

The Mayor of the City is hereby authorized and directed to direct the Tax Collector of Jefferson County, Alabama to pay the Pledged Tax Proceeds directly to the Bank in each fiscal year of the City, to the extent that the Pledged Tax Proceeds shall be needed to make required payments into the Warrant Fund, and also to pay the fees and expenses of the Bank hereunder.

Ex. A, § 9.

35.     In addition, pursuant to Alabama Code section 11-81-16, when a municipality pledges the proceeds of any property taxes to the payment of the principal of and interest on its general obligation debt, such pledged taxes and revenue "constitute a trust fund or funds which

10

shall be impressed with a lien in favor of the holders of the [obligations] to the payment of which such funds are pledged." Ala. Code § 11-81-16. By the terms of the Ordinance, the Warrants are "a general obligation of the City." Ex. A, § 6. The *ad valorem* taxes have been absolutely and irrevocably pledged for the payment of the principal and interest on the Warrants. *Id*. Therefore, such pledged revenues constitute a "trust fund" as a matter of law and are subject to a lien in favor of the Warrant holders, regardless of whether they have been deposited into the Warrant Fund or are held by the Tax Collector.

36. As of the Petition Date, the Warrant Fund contained $127,871 in pre-petition, pledged *ad valorem* tax revenues. However, on or about August 1, 2020, pursuant to the *Agreed Order Granting Limited Relief from the Automatic Stay with Respect to the General Obligation Refunding Warrants, Series 2004* [Docket No. 98], the Custodian processed a $125,300 interest payment due on the Warrants, using revenues on deposit in the Warrant Fund.

37. As of the Petition Date, the Tax Collector was holding approximately $675,925 in additional pre-petition pledged *ad valorem* tax revenues, which have not yet been deposited into the Warrant Fund.

**III.    Ambac Has Authority to Enforce the Rights and Remedies of Warrant Holders.**

38. Ambac, as the financial guarantor for the Warrants, has the express authority to enforce the rights and remedies granted to the Warrant holders under the Ordinance. Ambac is an express third-party beneficiary of the Ordinance. *See* Ex. A, § 28(e). Further, the Ordinance specifically provides that "[a]nything in this ordinance to the contrary notwithstanding, upon the occurrence and continuance of a default hereunder, Ambac Assurance shall be entitled to control and direct the enforcement of all right and remedies granted to the holders of the Series 2004 Warrants under this ordinance." Ex. A, § 28(a).

Case 20-01800-TOM9    Doc 113    Filed 08/27/20    Entered 08/27/20 17:58:22    Desc Main
Document      Page 13 of 29

39.     The Ordinance further states that, "[i]n addition to those rights granted Ambac Assurance under this ordinance, Ambac Assurance shall, to the extent it makes payment of principal of or interest on Series 2004 Warrants, become subrogated to the rights of the recipients of such payments in accordance with the terms of the Financial Guaranty Insurance Policy ... ." Ex. A, § 28(c)(vi).

40.     Prior to the Petition Date, the City defaulted on its payment obligations in respect of the Warrants. In fact, approximately $1.2 million in pledged revenues were misappropriated and converted in the prior four years. The City owes approximately $1.0 million to Ambac for unpaid principal of and interest on the Warrants.

41.     In 2017 and 2018, the Tax Collector did not transfer the pledged *ad valorem* taxes to the Custodian, as mandated by the Ordinance, thereby creating a deficit in the Warrant Fund. Upon its wrongful receipt of the pledged taxes, the City did not transfer them to the Custodian or otherwise cure the deficit and, accordingly, defaulted on its payment obligations to Warrant holders.  The City's misappropriation of the pledged revenues violated the terms of the Ordinance and applicable state law.

42.     Following each of the City's defaults on the Warrants, Ambac, as financial guarantor, made claims payments to Warrant holders.  Following the payment by Ambac to Warrant holders, the Warrant holders assigned their rights under the Warrants to Ambac.  *See* Ex. A, § 28(c)(iv). Therefore, by the terms of the Ordinance, Ambac has authority to enforce the provisions of the Ordinance against the City and other parties.

43.     On July 30, 2018, Ambac submitted a notice of default and demand for payment to the City detailing numerous events of default, including (a) the City's failure to transmit sufficient funds to the Warrant Fund to pay the principal and interest due and owing on the Warrants as of

February 1, 2017, February 1, 2018, and August 1, 2018; (b) the Tax Collector's failure to transmit the pledged *ad valorem* tax revenues to the Custodian prior to the February 1, 2017 payment date; (c) the City's failure to timely provide Ambac with audited financial statements and Annual Reports for the 2014, 2015, 2016, and 2017 Fiscal Years; (d) the City's failure to post the required financial disclosures on the Electronic Municipal Market Access (EMMA) system; and (v) the City's unlawful conversion of pledged *ad valorem* tax revenues.

**COUNT I**

**DECLARATORY JUDGMENT THAT THE *AD VALOREM* TAX REVENUES ARE "ABSOLUTE[LY]" AND "IRREVOCABLY" PLEDGED TO REPAYMENT OF THE WARRANTS AND CANNOT BE USED BY THE DEBTOR FOR ANY PURPOSE EXCEPT TO SATISFY THE CITY'S PAYMENT OBLIGATIONS WITH RESPECT THERETO**

44.     Plaintiff hereby incorporates the preceding paragraphs as if fully set forth herein.

45.     The Ordinance specifically states that, as security for the payment of principal of and interest on the Warrants, "the City hereby irrevocably pledges for payment of such principal and interest, and hereby orders segregated and set aside for that purpose, so much as may be necessary therefor of the proceeds of the general ad valorem tax … as well as the proceeds of the special municipal ad valorem tax ... ." Ex. A, § 6. The Ordinance mandates that the pledged *ad valorem* tax revenues be "segregated and set aside for that purpose." *Id.*

46.     The Ordinance requires that the Pledged Tax Proceeds "shall be paid into the Warrant Fund … in order to provide for payment of the principal of and the interest on the Series 2004 Warrants when due." *Id.* Section 7 of the Ordinance states that the pledged revenues in the Warrant Fund "shall be used *solely* for payment of the principal of and the interest on the Series 2004 Warrants upon or after their respective maturities." Ex. A, § 7 (emphasis added). Under the terms of the Ordinance, the Pledged Tax Proceeds may not be "used by the City for any lawful

13

purpose" unless or until sufficient Pledged Tax Proceeds have been deposited in the Warrant Fund for the payment of principal of and interest due on the Warrants. *Id.*

47.     In addition, Alabama Code section 11-81-15 states, in pertinent part,

In every county and municipality the officers charged by law with the duty of levying taxes shall annually, without further authority, levy a tax, insofar as such a tax is or may be permitted by the present or any future provisions of the Constitution, sufficient to pay:  (1) Bond interest falling due in that year of all bonds issued after March 15, 1933;  (2) The principal of all serial bonds issued after March 15, 1933 falling due during the current fiscal year; … Such tax shall be collected like other taxes and shall be applied *solely* to the said purposes.

Ala. Code § 11-81-15.

48.     The Debtor has no right to direct application or disposition of the Pledged Tax Proceeds under the Ordinance.  The revenues have been "absolute[ly]" and "irrevocably" pledged thereunder.  In fact, the Ordinance does not allow the pledged *ad valorem* tax revenues to ever come into the City's possession unless and until full debt service, principal and interest, has been paid on the Warrants.

49.     The irrevocable pledge of the *ad valorem* tax revenues was validated in the Validation Proceeding, where the Circuit Court specifically concluded that "those provisions of the Series 2004 Warrant Resolution that will provide that the Pledged Tax Proceeds may not be applied to pay any of the 'reasonable and necessary expenses of operating the City' and specifically, that the Pledged Tax Proceeds are not subject to claims for salaries or other expenses of operating the City are valid and binding provisions of the Series 2004 Warrant Resolution and of the Series 2004 Warrants." Ex. D, ¶ 10.

50.     The result of such validation is that "the judgment of the circuit court validating and confirming the issuance of the obligations shall be forever conclusive as to the validity of such obligations against the unit issuing them and against all taxpayers and citizens thereof, and the

14

validity of such obligations or of the tax or other means provided for their payment shall never be called in question in any court in this state." Ala. Code § 6-6-755.

51.     For the reasons stated herein, the Plaintiff is entitled to a declaratory judgment that the *ad valorem* tax revenues are "absolute[ly]" and "irrevocably" pledged as collateral for repayment of the Warrants and cannot be used by the Debtor for any purpose except to satisfy the City's payment obligations with respect thereto, unless and until all outstanding obligations under the Warrants have been satisfied.

## COUNT II

### DECLARATORY JUDGMENT THAT THE PLEDGED *AD VALOREM* TAX REVENUES ARE SUBJECT TO AN EXPRESS TRUST FOR THE BENEFIT OF WARRANT HOLDERS AND DO NOT CONSTITUTE PROPERTY OF THE DEBTOR

52.     Plaintiff hereby incorporates the preceding paragraphs as if fully set forth herein.

53.     The Ordinance established a "special trust fund" – the Warrant Fund – to be maintained "until the principal of and the interest on the Series 2004 Warrants shall have been paid in full" and into which the pledged ad valorem tax revenues are to be deposited to fund the principal and interest payments on the Warrants as they came due. Ex. A, § 7. The Ordinance mandates that the pledged *ad valorem* tax revenues be "segregated and set aside for that purpose." Ex. A, § 6. The Ordinance requires that the Tax Collector deposit the pledged *ad valorem* tax revenues directly into the Warrant Fund to fund the principal and interest payments on the Warrants as they come due. *See* Ex. A, §§ 7 & 9.

54.     The Circuit Court determined in the Validation Proceeding that the "provisions of the Series 2004 Warrant Resolution that will provide that the Pledged Tax Proceeds may not be applied to pay any of the 'reasonable and necessary expenses of operating the City … are valid

15

and binding provisions of the Series 2004 Warrant Resolution and of the Series 2004 Warrants." Ex. D, ¶ 10.  As such, the City has no interest in or to the *ad valorem* tax revenues.

55.     The pledged revenues are, as a matter of law, subject to trust, regardless of whether they have been deposited into the Warrant Fund. Pursuant to Alabama Code § 11-81-16, the pledged revenues "constitute a trust fund or funds which shall be impressed with a lien in favor of the holders of the [obligations] to the payment of which such funds are pledged." Ala. Code § 11-81-16.

56.     The City has no cognizable interest in the pledged *ad valorem* tax revenues, as such revenues are and will be held in trust for the benefit of the Plaintiff and the Warrant holders. *See* Ex. A, §§ 7 and 9.

57.     For the reasons stated herein, the Plaintiff is entitled to a declaratory judgment that the *ad valorem* tax revenues are subject to an express trust for the benefit of the holders of the Warrants and, therefore, do not constitute "property of the [debtor]" within the meaning of Bankruptcy Code section 362(a)(3), as modified by section 902(1).  11 U.S.C. §§ 362(a)(3) & 902(1).

## COUNT III

**DECLARATORY JUDGMENT THAT THE PRE-PETITION AND POST-PETITION *AD VALOREM* TAX REVENUES ARE SUBJECT TO A STATUTORY LIEN UNDER THE ORDINANCE AND APPLICABLE ALABAMA LAW**

58.     Plaintiff hereby incorporates the preceding paragraphs as if fully set forth herein.

59.     The Ordinance creates a statutory lien in favor of the Warrant holders.  By its express terms, the Ordinance effects an "absolute" and "irrevocabl[e]" pledge of the City's *ad valorem* taxes as security for the payment of the principal and interest due on the Warrants. Ex. A, § 6 ("as security for payment of such principal and interest … the City hereby irrevocably pledges

16

and hereby orders segregated and set aside for that purpose, so much as may be necessary therefor of the proceeds of the general ad valorem tax … [and the] special municipal ad valorem tax … that is levied and collected in the City").

60.　　In addition, Alabama Code section 11-81-16 states that any pledge of property tax proceeds by a municipality in connection with general obligation bonds "shall be impressed with a lien in favor of the holders of the [obligations] to the payment of which such funds are pledged." Ala. Code § 11-81-16.

61.　　For the reasons stated herein, the Plaintiff is entitled to a declaratory judgment that the pre-petition and post-petition *ad valorem* tax revenues are subject to a statutory lien under the Ordinance and applicable Alabama law.

## COUNT IV

### DECLARATORY JUDGMENT THAT THE POST-PETITION *AD VALOREM* TAX REVENUES CONSTITUTE "SPECIAL REVENUES" WITHIN THE MEANING OF SECTION 902(2) OF THE BANKRUPTCY CODE AND REMAIN SUBJECT TO THE WARRANT HOLDERS' LIEN PURSUANT BANKRUPTCY CODE SECTIONS 922(D) AND 928(A)

62.　　Plaintiff hereby incorporates the preceding paragraphs as if fully set forth herein.

63.　　The Warrants were issued "[p]ursuant to the provisions of the constitution and laws of the State of Alabama, including particularly Sections 11-47-4 and 11-81-1, Code of Alabama 1975, as amended, and for the purpose of financing the costs of the Public Improvements and refunding the Outstanding Obligations … ." Ex. B, § 2. Specifically, the City pledged the *ad valorem* taxes for the repayment of the Warrants in order to finance "various public improvements … in and for the City, and for the City to refund and retire various outstanding warrants or other obligations of the City... ." Ex. B, § 1(a). The Ordinance provides that "those of the Series 2004 Warrants having stated maturities in 2018 and thereafter are being issued to refund indebtedness

17

of the City that was issued to acquire or provide schoolhouses, waterworks and sewers." Ex. A, § 2. Accordingly, the pledge of such revenues are directly tied to specific projects within the City.

64.     In addition, the "Pledged Tax Proceeds" pledged to the Warrant holders under the Ordinance include the proceeds of a "*special* municipal ad valorem tax (the '*Special* Ad Valorem Tax') that is levied and collected in the City under the authority of Amendment No. 8 to the Constitution of Alabama of 1901, as amended, at the rate of 10.23 mills on each One Dollar ($1.00) of taxable property in the City." *Id.* (emphasis added).

65.     Bankruptcy Code section 922(d) states that:

Notwithstanding section 362 of this title and subsection (a) of this section, a petition filed under this chapter does not operate as a stay of application of pledged special revenues in a manner consistent with section 927 of this title to payment of indebtedness secured by such revenues.

11 U.S.C. § 922(d). Bankruptcy Code section 928(a) states that:

Notwithstanding section 552(a) of this title and subject to subsection (b) of this section, special revenues acquired by the debtor after the commencement of the case shall remain subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

11 U.S.C. § 928(a).

66.     For the reasons stated herein, the Plaintiff is entitled to a declaratory judgment that the post-petition *ad valorem* tax revenues specified in the Ordinance constitute "special revenues" within the meaning of section 902(2) of the Bankruptcy Code and remain subject to the Warrant holders' lien pursuant Bankruptcy Code sections 922(d) and 928(a).

## COUNT V

**DECLARATORY JUDGMENT THAT THE DEFENDANTS' FAILURE TO REMIT THE PLEDGED REVENUES TO THE WARRANT FUND VIOLATES THE ORDINANCE AND APPLICABLE ALABAMA LAW**

67.     Plaintiff hereby incorporates the preceding paragraphs as if fully set forth herein.

18

68. The post-petition *ad valorem* tax revenues specified in the Ordinance constitute "special revenues" within the meaning of section 902(2) of the Bankruptcy Code.

69. The pre-petition and post-petition *ad valorem* tax revenues are also subject to a statutory lien in favor of the Warrant holders under the Ordinance and applicable Alabama law.

70. The Ordinance requires the City and the Tax Collector to levy and deposit the pledged revenues directly into the Warrant Fund to fund the principal and interest payments on the Warrants as they come due. *See* Ex. A, §§ 7 & 9. Section 7 of the Ordinance states that the pledged revenues in the Warrant Fund "shall be used *solely* for payment of the principal of and the interest on the Series 2004 Warrants upon or after their respective maturities." Ex. A, § 7 (emphasis added).

71. In addition, Alabama Code section 11-81-15 states, in pertinent part,

In every county and municipality the officers charged by law with the duty of levying taxes shall annually, without further authority, levy a tax, insofar as such a tax is or may be permitted by the present or any future provisions of the Constitution, sufficient to pay: (1) Bond interest falling due in that year of all bonds issued after March 15, 1933; (2) The principal of all serial bonds issued after March 15, 1933 falling due during the current fiscal year; … Such tax shall be collected like other taxes and shall be applied *solely* to the said purposes.

Ala. Code § 11-81-15 (emphasis added).

72. Under the terms of the Ordinance, the Pledged Tax Proceeds may not be "used by the City for any lawful purpose" unless or until sufficient Pledged Tax Proceeds have been deposited in the Warrant Fund for the payment of principal and interest due on the Warrants. *Id.* There are unpaid principal and interest amounts due and owing on the Warrants.

73. The Debtor has sought to unlawfully invade and misappropriate the pledged revenues by demanding turnover thereof, both with respect to pre-petition and post-petition *ad valorem* tax proceeds.

19

74.    For the reasons stated herein, the Plaintiff is entitled to a declaratory judgment that the failure to remit the pledged *ad valorem* tax revenues to the Warrant Fund for payment of principal of and interest on the Warrants violates the Ordinance and applicable Alabama law.

**COUNT VI**

**INJUNCTIVE RELIEF DIRECTING THE TAX COLLECTOR TO TRANSMIT THE PLEDGED *AD VALOREM* TAX REVENUES TO THE WARRANT FUND**

75.    Plaintiff hereby reincorporates the preceding paragraphs as if fully set forth herein.

76.    The Ordinance requires that the Tax Collector deposit the pledged *ad valorem* tax revenues directly into the Warrant Fund to fund the principal and interest payments on the Warrants as they come due.  *See* Ex. A, §§ 7 & 9.

77.    The Tax Collector is holding certain pre-petition *ad valorem* tax revenues irrevocably pledged to the Warrant holders.  Furthermore, the Tax Collector has collected and will continue to collect post-petition *ad valorem* taxes, which are likewise subject to the pledge made to the Warrant Holders.

78.    Plaintiff is entitled to an order requiring Defendants to promptly and regularly transmit the pledged *ad valorem* tax revenues in accordance with the Ordinance, applicable Alabama law, and sections 922(d) and 928(a) of the Bankruptcy Code.

79.    Unless the Tax Collector is ordered to promptly and regularly remit the pledged *ad valorem* tax revenues to the Warrant Fund, in accordance with the Ordinance, the Plaintiff will be irreparably harmed. Should the City come into possession of the pledged revenues, it is likely to spend the funds and will not otherwise have the means to pay the principal of and interest due and owing on the Warrants.

80.    The Tax Collector will not be unduly harmed if he is ordered to remit the pledged *ad valorem* tax revenues to the Warrant Fund, as he has no interest in such funds.

Case 20-01800-TOM9    Doc 113    Filed 08/27/20    Entered 08/27/20 17:58:22    Desc Main
Document      Page 22 of 29

81.     For the reasons stated herein, the Plaintiff is entitled to injunctive relief directing the Tax Collector to remit the pledged *ad valorem* tax revenues to the Warrant Fund for the payment of the principal and interest due on the Warrants.

**COUNT VII**

**DECLARATORY JUDGMENT THAT THE CITY'S ATTEMPTED USE OR MISAPPROPRIATION OF PLEDGED REVENUES VIOLATES THE TAKINGS CLAUSE OF THE U.S. CONSTITUTION**

82.     Plaintiff hereby incorporates the preceding paragraphs as if fully set forth herein.

83.     The Takings Clause of the Fifth Amendment to the U.S. Constitution provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V.

84.     A lien is a property interest protected by the Takings Clause. The Warrant holders have constitutionally protected property rights and interests in the tax revenues pledged under the Ordinance.

85.     The Debtor has sought to unlawfully invade and misappropriate the pledged revenues by demanding turnover thereof, both with respect to pre-petition and post-petition *ad valorem* tax proceeds.

86.     Any use, conversion or misappropriation of the pledged *ad valorem* tax revenues by the Debtor, or the application of such pledged revenues for purposes other than payment of principal and interest due on the Warrants as provided under Ordinance, would constitute an unconstitutional taking of the Warrant holders' property without just compensation.

87.     For the reasons stated herein, the Plaintiff is entitled to a declaratory judgment that the City's attempted use or misappropriation of the pledged revenues violates the Takings Clause of the U.S. Constitution.

21

**DECLARATORY JUDGMENT THAT THE CITY IS PROHIBITED FROM CHALLENGING THE VALIDITY OF WARRANT HOLDERS' LIENS ON THE PLEDGED *AD VALOREM* TAX REVENUES UNDER ALABAMA CODE SECTION 6-6-755 AND THE DOCTRINE OF *RES JUDICATA***

88.     Plaintiff hereby incorporates the preceding paragraphs as if fully set forth herein.

89.     The City initiated the Validation Proceeding in order to obtain a final judgement from the Circuit Court regarding validity and enforceability of the *ad valorem* tax pledge in connection with the issuance of the Warrants.

90.     In the Trial Brief filed in the Validation Proceeding, the City admitted, and asked the Circuit Court to decree, that:

> [T]he pledge of the Pledged Tax Proceeds for the benefit of the Series 2004 Warrants is prior and superior to all salaries and other expenses of operating the City, and that all proceedings taken in connection with the authorization and issuance of the Series 2004 Warrants are and will be in all respects legal and valid; that the City has full power and authority to pledge the Pledged Tax Proceeds and to make payments thereunder to the holders of the Series 2004 Warrants; that the City has full authority under the Constitution and laws of the State of Alabama to execute and deliver the Series 2004 Warrants, to pledge the Pledged Tax Proceeds for the payment thereof, to use the proceeds of the Series 2004 Warrants to acquire, construct and equip the Public Improvements, to refund the Outstanding Obligations and to pay the expenses of issuance of the Series 2004 Warrants; …

Ex. C, p. 2.

91.     The Circuit Court entered the Judgment, holding therein that:

> [T]hose provisions of the Series 2004 Warrant Resolution that will provide that the Pledged Tax Proceeds may not be applied to pay any of the 'reasonable and necessary expenses of operating the City' and specifically, that the Pledged Tax Proceeds are not subject to claims for salaries or other expenses of operating the City are valid and binding provisions of the Series 2004 Warrant Resolution and of the Series 2004 Warrants.  Instead, the pledge of the Pledged Tax Proceeds under the Series 2004 Warrant Resolution and the pledge of the Pledged Tax Proceeds by the City for the payment, security and benefit of the Series 2004 Warrants will be prior and superior to all claims for costs and expenses of operating the City.

Ex. D, ¶ 10.

Case 20-01800-TOM9    Doc 113    Filed 08/27/20    Entered 08/27/20 17:58:22    Desc Main
Document      Page 24 of 29

92.     In the portion of the Judgment titled "Final Judgment," the Circuit Court adjudged and decreed that "[t]o the extent necessary to validate and confirm the Authorizing Resolution, the Series 2004 Warrants and the means provided for the payment of the Series 2004 Warrants, the Court specifically holds that … the pledge of the Pledged Tax Proceeds by the City for the benefit of the Series 2004 Warrants and other provisions in the Series 2004 Warrant Resolution for the security and benefit of the Series 2004 Warrants is prior and superior to all claims for expenses of operating the City."  Ex. D, Final Judgment, ¶ 4.

93.     Based on the doctrine of *res judicata*, the City is bound by the Judgment validating the Warrants, the pledge of the *ad valorem* taxes, and the Circuit Court's other findings and legal conclusions therein.  The City is, therefore, barred from challenging or collateral attacking the very Judgment it sought and obtained.

94.     Moreover, because the Warrants and the irrevocable pledge of the City's *ad valorem* taxes in connection therewith were validated and confirmed by the Judgment, pursuant to Alabama Code § 6-6-755, "the validity of such obligations or of the tax or other means provided for their payment shall never be called into question in any court of this state."  Ala. Code § 6-6-755.

95.     For the reasons set forth herein, the Plaintiff is entitled to a declaratory judgment that the City is prohibited from challenging the validity of Warrant holders' liens on the pledged *ad valorem* tax revenues under Alabama Code section 6-6-755 and the doctrine of *res judicata*.

## RELIEF REQUESTED

WHEREFORE Plaintiff respectfully requests that the Court enter judgment against Defendants as follows:

(a)     On Count I, declaring that the *ad valorem* tax revenues are "absolute[ly]" and "irrevocably" pledged to repayment of the Warrants and cannot be used by the Debtor for any

23

purpose except to satisfy the City's payment obligations with respect thereto, unless and until all outstanding obligations under the Warrants have been satisfied;

(b)     On Count II, declaring that the *ad valorem* tax revenues are subject to an express trust for the benefit of the holders of the Warrants and, therefore, do not constitute "property of the [debtor]" within the meaning of Bankruptcy Code section 362(a)(3), as modified by section 902(1);

(c)     On Count III, declaring that the pre-petition and post-petition *ad valorem* tax revenues specified in the Ordinance are subject to a statutory lien under the Ordinance and applicable Alabama law;

(d)     On Count IV, declaring that the post-petition *ad valorem* tax revenues specified in the Ordinance constitute "special revenues" within the meaning of section 902(2) of the Bankruptcy Code and remain subject to the Warrant holders' lien pursuant Bankruptcy Code sections 922(d) and 928(a);

(e)     On Count V, declaring that the failure to remit the pledged *ad valorem* tax revenues to the Warrant Fund for payment of principal of and interest on the Warrants violates the Ordinance and applicable Alabama law;

(f)     On Count VI, granting injunctive relief directing the Tax Collector to remit the pledged *ad valorem* tax revenues to the Warrant Fund for the payment of the principal and interest due on the Warrants;

(g)     On Count VII, declaring the City's attempted use or misappropriation of the pledged revenues violates the Takings Clause of the U.S. Constitution;

24

(h)     On Count VIII, declaring that the City is prohibited from challenging the validity of Warrant holders' liens on the pledged *ad valorem* tax revenues under Alabama Code section 6-6-755 and the doctrine of *res judicata*; and

(i)     On all Counts, granting such other and further relief as the Court may deem proper.

Dated: August 27, 2020

LIGHTFOOT, FRANKLIN & WHITE LLC

*/s/ Sara Anne Ford*

Sara Anne Ford
400 20th Street North
Birmingham, AL 35203
E-mail: sford@lightfootlaw.com
Telephone: 205-581-0700

-and-

MCDERMOTT WILL & EMERY LLP

Nathan F. Coco
Pennzoil Place
700 Milam Street
Suite 1300, PMB 106
Houston, TX 77002
E-mail: ncoco@mwe.com
Telephone: 713-653-1775

Megan Preusker
444 West Lake Street, Suite 4000
Chicago, IL 60606
E-mail: mpreusker@mwe.com
Telephone: 312-984-3668

26

**SERVE DEFENDANTS BY CERTIFIED MAIL:**

City of Fairfield, Alabama
4701 Gary Avenue
Fairfield, Alabama 35064

J.T. Smallwood
Jefferson County Tax Collector
716 Richard Arrington Jr. Blvd N
Birmingham, Alabama 35203

DM_US 172202334-1.043177.0069